than 27 feet is not practicable. The evidence does not indicate that it was necessary that the third rail should project into the highway at all. The plaintiff offered to show the distance between these rails at other crossings on this line. The evidence was rejected, and he excepted. If it had been shown that at other places a much greater space existed than at this point, it would have indicated that the rails unnecessarily projected into the highway. The exclusion of this evidence was error.

[4] If the third rail projected into the highway unnecessarily, it was a nuisance, and the defendant is liable for any injury occasioned thereby. Caruzo. v. Troy Gas Company, 153 App. Div. 431, 138 N. Y. Supp. 279; Id., 209 N. Y. 510, 102 N. E. 1100. The third rail terminated on the cattle guard, but there is nothing in the record to show that the cattle guard was legally in the highway.

[5] It was necessary for the defendant to show just what rights it had obtained to make this use of the highway, which prima facie is illegal. The mere consent to operate its road by electricity or by the third rail does not establish the legality of this encroachment upon the highway. We are not determining that any law permits the local authorities or the public service commission to permit a third rail, charged with deadly current, to encroach upon the highway within 18 inches from the ground; we are holding that if the defendant claims such a right it must show the facts fully establishing it.

The judgment should therefore be reversed, and a new trial granted in the County Court, with costs to the appellant to abide the event. All concur.

---

### BROWN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. May 8, 1914.)

RAILROADS (§ 348*)—ACCIDENTS AT CROSSING—ACTIONS—SUFFICIENCY OF EVIDENCE.

    In an action for injuries received by one who was struck by the locomotive of a train from which he had just alighted, a verdict finding negligence by the defendant and freedom from negligence on the part of the plaintiff *held* clearly against the weight of evidence; plaintiff's testimony that the locomotive was standing still when he started across the track, and that it started without making any noise and struck him before he got across, being opposed not only to the probabilities in the case but to natural and physical laws.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. § 348.*]

Action by Orlando W. Brown against the Long Island Railroad Company. Motion by the defendant to set aside the verdict of the jury in favor of the plaintiff and for a new trial granted, and plaintiff appeals. Affirmed.

The following is the opinion of Van Siclen, J., at Trial Term:

    The defendant moves to set aside the verdict of the jury in favor of the plaintiff and for a dismissal of the complaint after a trial had at the May, 1913, Trial Term of this court; decision having been reserved upon defendant's motions made after plaintiff had rested and at the end of the entire case.

    Plaintiff was severely injured by being struck by a locomotive drawing a

train of cars of the defendant, after having alighted from said train at Rockville Centre February 19, 1912, at about 11 o'clock at night. The testimony, in substance, discloses the following facts: The plaintiff had resided at Rockville Centre and had regularly traveled as a passenger on defendant's train between Rockville Centre and New York City for four years, and had used the train which injured him several times, and was not only familiar with the locus in quo, but also fully understood that the train in question would immediately, after having made a way stop at Rockville Centre, continue in an easterly direction and across the Park Avenue crossing at which he was injured. At Rockville Centre, the station is on the northerly side of the tracks, and on the southerly side thereof is a cinder platform leading easterly almost to the westerly side of the Park Avenue crossing. The east and west bound tracks are separated by a fence in which there is a sliding gate about opposite the station through which plaintiff could have passed to the north at the rear of the train on which he arrived. The Park Avenue crossing is protected by gates operated by a gateman from the northerly side, which gates were down at the time of the accident.

The train in question came to a stop with the front or head of the locomotive at, or near, or on the westerly side of the Park Avenue crossing. The plaintiff left the train and walked easterly along the cinder platform. At the easterly end of said platform which does not run or lead directly up to the crossing, plaintiff turned south on a board crossing over the gutter away from the train, and then, instead of thus continuing, which would have taken him to the south of the gates into a place of safety, he again turned and proceeded in an easterly direction alongside of the locomotive to a point on the Park Avenue crossing a few feet in front of said locomotive and inside of the gates at which point plaintiff claims he paused, looked toward the engineer in the cab of the locomotive, who plaintiff claims passed his hand in front of his face once or perhaps twice, which plaintiff interpreted as an invitation to cross over, and thereupon plaintiff, in full possession of his faculties, started to cross over, knowing that the train had made only a way or temporary stop, in front of the locomotive then as he claims at a standstill, and, before he could get clear of the tracks upon which the locomotive was standing, it was started up without any noise or warning, and the northerly or left side thereof struck plaintiff, knocked him down, and ran over him. A careful reading of the testimony of the other witnesses called by plaintiff fairly establishes the fact that the plaintiff was struck or caught by the right side of the locomotive which had started with the usual noises. Plaintiff's witness Frank O'Callaghan stated that with another he had crossed at Park avenue from the north to the south side immediately before the train came in when the gates were down; that they walked easterly along the cinder platform and saw plaintiff walking about 20 feet ahead of them; that they stopped at the end of the platform at which time the train was moving and about one-quarter the way across the crossing, when they saw plaintiff caught on the south side of the locomotive, the wheels of which passed over him, and thereafter he crawled from under the car next to the locomotive to the other side of the track. Said witness further testified that he and his companion or companions were waiting for the train to pass so that they could cross over to the northerly side.

The disputed questions of slight raising of the north gates, the failure to ring locomotive bell, or give other warning of starting of the locomotive, are of little importance for the reason that plaintiff had full knowledge of the situation which confronted him, and it seems therefore in order to support the verdict the evidence must disclose special facts and circumstances which would warrant the jury in finding the defendant negligent and plaintiff free from contributory negligence.

Plaintiff contends that the passing of his hand in front of his face once or perhaps twice, which plaintiff interpreted as an invitation to pass over in front of the locomotive, established with other facts sufficient grounds to support the verdict of the jury. A careful reading of the record shows that the plaintiff's testimony upon the point is uncorroborated and is emphatically denied by the engineer, and whose act in starting the locomotive is wholly contradictory to plaintiff's claim, which is unsupported by any evidence of any

word or act of the engineer that he intended the alleged motion as a signal for plaintiff to cross; or understood, or realized, that plaintiff interpreted the alleged motion as an invitation to cross with assurance of safety. Furthermore, plaintiff claims that he was struck on the north side of the track by the left side of the locomotive, while every other eyewitness testified it was at the right or south side. Under the authorities, whether the alleged motion of the engineer was real or imaginary or wholly fictitious, and, as defendant infers, introduced for the purpose of making out a case requiring submission to the jury (see original complaint and bill of particulars), the verdict of the jury is clearly against the weight of evidence. Hatch v. L. S. & M. S. Ry. Co., 156 App. Div. 395, 141 N. Y. Supp. 1055; Biggers v. N. Y. Central, etc., 157 App. Div. 245, 141 N. Y. Supp. 827, and cases cited; Mearns v. Central Railroad of New Jersey, 163 N. Y. 108, 57 N. E. 292; Flaherty v. Meade Transfer Co., 157 App. Div. 416, 142 N. Y. Supp. 357. Considering the evidence most favorably to the plaintiff, the claim of the plaintiff is opposed not only to all the probabilities of the case but to natural and physical laws. It is unthinkable that the accident should have happened as claimed by the plaintiff; that the locomotive drawing a train of cars could have started up without any noise or warning and struck plaintiff down before he could clear the tracks, assuming as correct the position of the locomotive at a standstill and plaintiff's position immediately prior thereto. That the accident happened in any way other than that plaintiff attempted to "beat over" the then moving locomotive and was caught or slipped and was struck down and run over by the locomotive is hardly conceivable after a careful and impartial reading of the record. To permit the verdict to stand which is clearly against the weight of evidence both as to the negligence of the defendant and freedom from contributory negligence on the part of the plaintiff would result in great injustice to the defendant.

Defendant's motions to set aside verdict and for a new trial are therefore granted. Verdict set aside, new trial granted, exception thereto to plaintiff. Thirty days' stay of execution and 60 days to make and serve case granted to plaintiff.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Martin T. Manton, of New York City (William H. Griffin, of New York City, on the brief), for appellant.

John J. Graham, of New York City (Henry A. Uterhart, of New York City, on the brief), for respondent.

PER CURIAM. Order unanimously affirmed, with costs, on the opinion of Mr. Justice Van Siclen at Trial Term.

---

(162 App. Div. 209)

### FRICK CO. v. PULTZ.

(Supreme Court, Appellate Division, Third Department. May 6, 1914.)

1. SALES (§ 285\*)—WARRANTIES—NOTICE OF DEFECT.

Where a threshing machine was sold under a written contract which contained certain warranties, but required the buyer to give notice of defects in writing within five days from first putting the machine in operation, and provided that if it was used longer than that period without notice it should operate as an acceptance and as a fulfillment of the terms of warranty, and that any assistance rendered by the agents of the seller in operating the machinery should not dispense with the required notice, the buyer's failure to give the stipulated notice was fatal to his defense to an action for the purchase price that the machine was so defective as to be useless.

[Ed. Note:—For other cases, see Sales, Cent. Dig. §§ 806–808, 810; Dec. Dig. § 285.\*]